case involving special conditions of supervised release. First of all, just a little bit of housekeeping. We raised three issues in this appeal. The first one, as I notified, the court is now moot. That leaves two supervised release conditions, special conditions of supervised release that we've challenged. I'm going to focus most of my argument on the sexually oriented materials condition. Hopefully I'll have a brief argument at the end regarding the being in areas where minors frequent. As you know, uh, the district court has a lot of discretion in imposing supervised release terms, especially conditions, especially special conditions on supervised release. That discretion, however, is limited. There are two specific limits and some subsets of those limits. But the two basic limits are there has to be a reasonable relation between the special condition and the factors that are set forth in 3553, those factors that 3583 identifies. And then the second one is that those conditions shouldn't be an undue burden on the defendant's liberty interest. And in some sense, those two inquiries fit together because it's really a question of fit, whether special conditions fit a particular defendant. I think this court has in the District of Texas, many conditions that are called special have become standard. And I think that's why you're hearing a lot of these cases right now is that that fit is often not present. And that's what happened in Mr Prieto's case. So the condition that a defendant not look at, possess or use sexually explicit or sexually oriented materials is a fairly common condition in the Western District in cases involving sex offenders. As this court held in Salazar, that condition, although it might seem obvious in any case in which a defendant has had a sex offense, it nonetheless still has to be tailored to that defendant. The court looks both at the offense of conviction and at the defendant's prior criminal history when determining whether there's a fit under that first 3553 factor. Mr Prieto's offense is a SORNA offense. This court held in Segura, that is not a sex offense. So there's no fit between his offensive conviction and this condition. That brings us, I think, to the harder question. Is there a fit between his prior? Why did he have to register under SORNA? He had a 2006 two count conviction for first degree sexual abuse of a minor. It involved digital penetration. Very serious offense. So that really brings us to that question. Does a prohibition against adult pornography and what the Western District calls sexually oriented materials, does it fit with that prior offense? The court held in Salazar, very similar facts, that there was no fit involved pornography, not even child pornography. There's no record of even child pornography in this case. Wouldn't that mean that you're on plain error though, right? Yeah, I am. Salazar was not plain error. It was not. We're talking at this point about the legal holding of Salazar. So you get to prong one and prong two because it's issued before. But how do you satisfy prongs three and four? I got a tough road to hoe there. I think I can do it. Prong three. This court has held that a special condition or a sentencing error affects the defendant's substantial rights when the result would have been different. But for the error, right, there would not have been a burden on a defendant. But for the error, Mr Salazar is a 73 year old man. He is now subject to 90 day intervals of supervised of a reporting under Texas law. He has a lifetime of supervised release ahead of him with numerous conditions, most of which we have no objection to. He ought to have those conditions. An additional condition number one gives him an additional opportunity to violate. And we're not talking about violating by looking at child pornography. We're talking about possibly violating by reading or watching 50 Shades of Gray if that happens to be something that he would like to read or watch. So he has another. He has another area in which he might violate. In addition to that, uh, pornography, whether we like it or not, it's protected by the First Amendment. But more than that, this this condition sweeps broader than pornography. I'm not saying it's it sweeps to lingerie ads, but I think it very clearly sweeps to 50 Shades of Gray. So we're talking about a constitutionally protected interest in what he reads and what he views. And I think even more significantly, I have no idea what Mr Pretty at those reading habits are. But even more significantly, he has to decide before he picks a book up or before he goes to a movie whether or not he's violating his supervised release. I think that's a burden. I think the court may ask you a question right now, judging from the cases I've seen lately, and there are a lot of them. It's something of a cottage industry in your line of work to question these, uh, to levy a First Amendment challenge to some of these conditions that show up in these cases. Um, and they keep coming up, at least the ones I've seen on plain air, which means that in the district court, nobody said to Judge Janelle, by the way, good luck on that, said to Judge Janelle, Okay, we're going to object to this. This is protected activity, and we don't think that this ought to happen. And if that had happened, then the government, I mean, it is a standard condition. There must be some frequent condition anyway. Um, there must be some way that that can be defended by the government by some kind of showing that, well, in the case of somebody who's had a, uh, first degree sexual abuse of a minor conviction, um, reading all this, uh, pornography or whatever, uh, sexually stimulating materials has a way of, uh, putting them, putting all this back in their mind and so on. I don't know what they'd show. But the point is they never have had an opportunity to do it. Right now, lawyers like you, and I admire you for saying, Hey, wait a minute. What are we doing here? But if you say that in the district court and you give notice, and the government then has to prove up this condition in some way, make a case for it. That's one thing. But to then say to us, Well, this is protected activity and, you know, and you, the Fifth Circuit, you need to tie it all in here. I mean, we're not in that business on a on a clean record, so to speak. I sure wish we had an objection. Um, and I don't want to make excuses for not having an objection that the district courts treat these a standard conditions is a fact that has affected the entire bar. And, um, in this case, trial counsel was very focused on an issue that's now moot, and I suspect overlooked this question, and we are providing training in our office. And, um, and none of that has anything to do with whether this condition affected Mr Prieto's substantial rights, which I would contend it did. I think it does have something to do with the fourth prong, which is whether this is something that you guys should reach out and correct. You know, the substantial rights prong. That's a personal question. That's, you know, has Mr Prieto been affected? I think he has. The fourth prong is an institutional question. It's a question for all of us. Given that these conditions are becoming more or less standard, given that supervised release conditions, no matter how many times anybody in this court says this is easy. This is small. This is little. They aren't a criminal defendants. They're not easy. They're not small. They're not little, and they're not easy to get modified. They require taking time off work. They require litigation. They require getting back into matters that perhaps the defendant doesn't want to get into. So why this court should reverse this is that it's here in front of us. It's a common mistake. These have, in fact, become more or less standard conditions in many of our divisions. Now, some of our divisions have been listening to the court. You hear wonderful both explanations for their conditions and refusal to impose conditions just like this one. But some districts, some divisions are treating them like standard, and regardless of defense counsel's error, it needs to be corrected. One, because we pride ourselves in proportionality, and we pride ourselves in reason, and that's what we tell people who don't practice and work in the federal judicial system that we're about. And our reason our sentences should reflect that proportionality and that reason. The government cited a lot of cases to you about, um, where this condition has been been upheld, either under plain air or not. Well, on one end of that spectrum is a case like Mr McGee. Mr McGee is a sexual deviant. I don't know of a context in which Mr McGee wouldn't or didn't abuse a person. He did it with family members. He did it with non family members. He did it in prison. He did it on supervised release. The district court threw its hands up in the air, and it said, You know what? I don't know what else to do with you. No sexually oriented materials. And this court said, Yeah, he's a deviant. Well, on the other end of the spectrum, you have someone like Mr Prieto, who did a terrible thing nine years ago, who was 73 years old and who, as far as you and I know, and this record tells us, has not even looked at pornography. But in the interim, he has been guilty of the commission of of several other crimes. Has he not? He has. And the record reflects that he probably has an alcohol problem. He has been ordered to abstain from drinking alcohol. We did not object to that condition. It reflects that he may have a domestic problem in that area. He's been ordered to stay away from the woman that he lived with. We have no objection to that condition. The record also reflects that Mr Prieto is very much on the radar of local authorities in that square of New Mexico and Texas that he lives. The authorities to borrow an expression my grandmother used to use were on Mr Prieto like white on rice when he failed to register, and they were very much aware of his domestic problem there in the area. In other words, the conditions that have been placed on Mr especially at his age are more than sufficient to keep him from engaging in the kind of offenses that you're talking about. Well, all right. But looking only at the fourth prong, what you've indicated is that for whatever reason, he has some serious self control issues that have continued into into at least past middle age. And so in terms of the integrity of the judicial system, which is obviously what the fourth prong speaks to that and other things, how does it offend the integrity of the judicial system if this sort of condition, which has been imposed on other defendants under other circumstances, is imposed? How does that so thoroughly undermine the respect for the system that we should exercise our unusual discretion here? I think and I'm arguing this. I don't have support for it. I think when you look at that fourth prong, you want to be sure that you look at it in relation to the case you have. This is a relatively small case. It's not a capital case. He hasn't been ordered to death right unfairly. He's been had a supervised release condition imposed. So in the universe of imposing supervised release conditions, is this one that you should exercise your discretion? And I would say that for at least three reasons, one to stem the tend to treat these as standard conditions to to make sure that you and I can say to someone else, You know what? This condition actually makes sense. And Mr Petito's case, it makes sense because he's standing at the 7 11 looking at the magazines above. I shot all the time and we don't know what the effect of that's gonna be. It makes sense in this case. Three, because there are First Amendment implications. Um, that's not true with other conditions, but it is true with this one and four because it's a lifetime condition of supervised release a long time, and it simply exposes a man who already lives a troubled life to further risk that he's gonna end up back in jail or that he's gonna have to make a decision that not to read something he might want to read. Otherwise, I am troubled by the notion that we are supposed to stem the tide of these standard conditions in a case where the government wasn't given an opportunity to make a record for it. I understand that. And I want to add one thing that I didn't say, and that is that as an initial matter, the burden is on the district court to explain a special condition. So that's where the initial burden lies. There was nothing in this case by the district court to give a reason why this was. This was connected. So there is that kind of a initial burden that's on the district court to connect it. That isn't there. And I think that ought to, um, to be taken into account when considering whether you should correct. All right. Thank you, Miss. Thank you very much. Time for a bottle. Mr Stomach. Yeah. May please the court. Um, just heard one of the special conditions argued today. So I guess half my argument going to minors frequent isn't doesn't need to be addressed. Well, I'm gonna ask you a couple of questions about it. So I'll keep this. I'll keep this ready then as to the possession of sexually stimulating materials. This is related to his criminal history. His criminal history of when he was 62. The convictions are criminal penetration in the first degree in the New Mexico statute and involved two little girls involved a five year old girl and a three year old girl. Um, so that's that's his. That's his background. I don't think the parallel to McGee is all that strange, especially in a plane air type comparison. You've got lots of parallels. So does that mean you disagree that Salazar would say that prongs one and two are satisfied? I don't. I disagree that I think Salazar is different in that Salazar had one remote conviction. This one is eight years away, um, from his failure to was third degree abuse. It was a contact case. It was a contact, a sexual contact case, a third degree offense, not nearly as severe. That would be my argument. Not nearly as severe as Prieto's to two convictions. The remoteness aspect is not as great on this. Salazar is an abusive discretion case. And this is a, this is a plane air case. And I think the parallel, I would say the parallel to McGee is the best parallel. It's, it's, it's a lifetime supervised release. It's a failure to register case. His background was called child molestation. There's no evidence that McGee ever had access to pornography. There's no evidence that pornography contributed to McGee's offense. So if the only thing we're saying is that McGee was a much worse guy than Prieto, I don't, I don't think that that's true. McGee has three, McGee is terrible. McGee raped his brothers three times between the ages when he was between the ages of 14 and 17. And as far as the institutional, when he was in juvenile, um, confinement, those were not serious offenses at all. They were involved grabbing people in the shower and whatever. Um, so you're comparing, you're comparing someone between the ages of 14 and 17 who raped his brothers. And, and then you're comparing that to a 63, 62 year old man who perpetrated the criminal, um, penetration in the first degree offenses of a three year old and a five year old. Don't think that that's a stretch at all. Um, Duke is, Duke is, is different. Duke is, is, is prohibited from accessing computers and this is much more narrow. He's not prohibited from access to computers. He's only prohibited from sexually stimulating material. And, and as to, as to novels and, and, and, um, art exhibits that that's all been resolved in the Paul case and the Phipps case and Ellips Ellis. It's just, it's a, you do a common sense reading of, of, of the condition and it's been held not to include, um, works of art or literature. Um, and in the field case that this has been brought up before this, that this is different, that these are modifiable in, in fields. The court said that modifiable conditions work a less significant deprivation of liberty than one which, which can't be altered. And so in this case there's, there's some aspects, um, uh, that are related to other cases. There's not perfect congruence. I can't give you a perfectly congruent case, but I think that there's enough parallels that, that it's not, um, a plain or obvious error case. And the discretionary factor you have to ask yourself, I mean, was the district court derelict in, in, in imposing these conditions? Unchallenged, fairly common conditions based on his, his really bad criminal history? Is that a shock to conscience type case? Um, I also saw that kind of an interesting, in that Seventh Circuit case, that a modified factor in saying that, that it, it, by affirming it on plain air, that actually promotes the integrity of the system because it prevents multiple appeals and resentencings when something is, is, is modifiable. Um, so that's all I have on the, on the, um, sexually stimulating. Um, Judge O, did you want to ask something about that? I wanted to ask you, do you, would you agree with the characterization in fields that the language that is at issue on the other condition, the geographic condition, does not include locations such as grocery stores, places of worship, transportation hubs, and most stores? The, the, the court reconciled the language, you know, as we have our precedent to do, to, to, to make sure it's clear, to, to try to provide some clarity. You said that that was clear, that it does not involve . . . So, you would agree that that language applies, that it could apply to schools and playgrounds, but not worship centers, grocery stores, transportation hubs, and most stores. Yes. So you, that would be fine with you if that was in this case, too. And that's . . .  And that's your interpretation of how . . . And that's my interpretation of fields. And this is really right on, on point with fields. And if . . . Well, then, can you help me? It says most restaurants. I, I'm just, I want to know if the government has a view. Does this apply to a Chick-fil-A with a barricade? I, what, what are . . . There's, there's, there's no problem with that because he has the ability to check with his probation officer and say, is this within the, the scope and the probation officer would . . . Right. But we can't delegate our duty to the probation officer. Right. So, there's a non, there's, there gets to be a delegation problem if it's just whatever the probation officer says. We have to be careful. Right. So, how do you interpret . . . So, we're back to our, we're back to what, what Paul said. So, right. So, I'm asking . . . Common sense. I, I'm asking in the government's common sense, does it apply to a Chick-fil-A with a playground and a movie theater with an arcade? And I, I won't go . . . I think you could go to the Chick-fil-A, but you couldn't go to the playground. The, the movie theater with an arcade. Can you go to the movies? That's what the probation officer's supposed to decide. But the probation officer can't decide it if it's our, we can't delegate that to the probation officer. It has to be clear from the, from the, from our, our ruling. My answer would be, what's the common sense determination? That's what I'm asking the government. What's the common sense? And that's the only one I'm going to ask. Going to a movie theater, is that what's left on the table? Yes, movie theater. You already answered Chick-fil-A. And I'm just naming that as a rest, as a restaurant that doesn't have a playground. Not going to a movie theater that had, was showing a children's movie. But otherwise, not. Thank you, Mr. Spillaw. Thank you. Ms. Goldtharp, you've saved time for your vote. Thank you. Just briefly. First of all, I'd like to point out that one distinction between McGee and Salazar is that McGee is unpublished. I agree that McGee, there is not a specific connection between pornography and the defendant in McGee. And therefore, I think it's an outlier. It's unpublished. I certainly disagree with Mr. Stalmach that grabbing in the shower is not a serious offense. I've heard many prison stories that suggest otherwise. I'd also like to remind the court that this is a lifetime, that there are other ways of addressing the concerns that Mr. Stalmach raised, and that those conditions are already in place. It is very difficult to be a criminal defense attorney in cases like this. But I will tell you this. We have a limited number of ways of expressing our shock and outrage. We shouldn't reach for every tool that we have. Mr. Prieto is under a lifetime term of supervised release because the district court was outraged. He cannot live where children live or near where children play because the district court was outraged. He cannot drink alcohol because the district court was outraged. All of those conditions make sense. They're connected to Mr. Prieto, and they reflect everybody's outrage at his 2006 offense. The pornography offense, it's just, it's not even icing on the cake. It's icing in a bowl next to the cake. It has nothing to do with Mr. Prieto's offense. He was 62 when he committed his prior offense. I disagree that nine years isn't remote. He's now 73. Statistics tell us that his risk of recidivism is going to abate. At the same time, his ability to report to his probation officer is going to lessen. I don't think we need to be putting icing next to the cake. I think we need to be addressing, I think we garner respect for our system when we address the defendant who is in front of us. Not the defendant we're afraid of, not the defendant who was in front of us yesterday, not the defendant who was in front of us in Mr. McGee. As far as a common sense reading of the pornography restriction in particular. This court did hold, in cases like Phipps and Paul, that that should be read with a common sense understanding. That's a different condition, it's from a different district. It includes language that says, and by the way, you can't go to adult bookstores, you can't go to adult theaters. And what this court said in those cases is, well, it's clear if you read it as a whole, if you read that second part about adult theaters and adult bookstores, that this is a pornography condition. This is about a particular subset of materials. That's not the Western District's condition. It says pornography, it says sexually explicit, but it also says sexually oriented. And I would also like just to remind the court that I actually am objecting to the portion of the condition as well that applies to adult pornography. He has a right, according to the Supreme Court, to view adult pornography. Unless somebody has said, you know, there's something about Mr. Prieto, he shouldn't be looking at adult pornography, and we just don't have that here. Well, it's a plain error record, you don't have it here, that's right. I know. The court in Duke rejected the notion that modification should affect the court's analysis, simply because the way that Mr. Prieto has objected to this condition is perfectly acceptable under the rules. As a defense attorney, I can tell you that modification is no less a waste of judicial resources than what we're doing right here. And unless the court has questions, I would like to just, as far as the places where children frequent, just remind, I think Fields makes this a very difficult argument for me. But just to remind the court that it is a lifetime condition, and if the court should see fit to reduce it or ask the district court to reduce it to a number of years, I believe under Duke that would be an appropriate remedy. All right, thank you, Ms. Cooper. Thank you very much. You've done a very good professional job of treading the line between representing the interest of your client and serving as an officer of the court to help us decide the case, and we certainly appreciate that. Thank you very much. Your case is under submission.